UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

IN RE: )
)
315 UNION STREET HOLDINGS, LLC, ) CASE NO. 10-13106-KL-11
UNION STREET PLAZA OPERATIONS, ) CASE NO. 10-13107-KL-11
LLC )
) Jointly Administered Cases
Debtors )

# ORDER (1) APPROVING SALE OF CERTAIN ASSETS OF THE DEBTORS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, AND (2) REJECTING CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES

This matter came before the Court on September 13, 2011 (the "Hearing"), upon the motion, dated August 9, 2011 (the "Motion"), filed by Robert Waldschmidt, the Chapter 11 Trustee ("Trustee") for the above-captioned debtors (collectively, the "Debtors"), seeking, inter alia, entry of an order (the "Order"): (1) approving the sale of certain assets of the Debtors (the "Purchased Assets") free and clear of all liens, claims, encumbrances, and other interests pursuant to Sections 363(b), (f), and (m) of Title 11 of the United States Code (the "Bankruptcy Code"), (2) rejecting certain executory contracts and unexpired leases and (3) granting related relief. At the Hearing, counsel for the Trustee and other counsel and parties-in-interest entered their appearances on the record.

Objections were filed by (1) The Metropolitan Government of Nashville and Davidson County, (2) Holiday Hospitality Franchising, Inc., (3) 315 USP LKW, LLC, (4) the Debtors, (5) TN Nashville, LLC, (6) HMAC 99-PH1 Union Street Office, LLC, and (7) Wolfgang Sauermann.

At the hearing on September 13, 2011 the objections of TN Nashville, LLC and HMAC 99-PH1 Union Street Office, LLC were withdrawn by their counsel, and the Trustee advised the Court that all of the objections of The Metropolitan Government of Nashville and Davidson

County and Holiday Hospitality Franchising, Inc. had been resolved, by and through the inclusion of provisions in this order which clarify the sale of assets and rejection of contracts herein. Wolfgang Sauermann did not appear at the hearing, and, with the rejection of the executory contract with King & Ballow, does not have any further claim to the property, and hence his objection is overruled.

The remaining objections of 315 USP LKW, LLC, and the Debtors were considered, and the Court heard testimony from the Trustee, Brown Kessler, and Bob Winston, and considered arguments from counsel for said objecting parties. At the conclusion of the hearing, the Court made Findings of Fact and Conclusions of Law on the record (which are hereby incorporated by reference) and concluded that the Trustee had adequately articulated a business justification for the sale of these assets under 11 U.S.C. §363(b)

After reviewing the Motion and Affidavit of the Trustee, other testimony and proof offered at the hearing, and such other matters in the file as the Court deemed appropriate, after hearing the statements and representations of counsel and all persons who desired to be heard at the Hearing, and after considering such other and further matters as the Court deemed appropriate, the Court hereby

FINDS AND CONCLUDES as follows:

A.  The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O). Venue of this case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.  The statutory and legal predicates for the relief sought in the Motion are, inter alia, Sections 363 and 365 of Title 11 of the United States Code (the "Bankruptcy Code"), and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002, 6004, 6006, and 9014.

C.  As evidenced by the certificates of service previously filed with the Court, and based on the representations of the Trustee at the Hearing, (I) proper, timely, adequate, and sufficient notice of the Motion, the Auction, the Transaction, the Hearing, and the assumption and assignment of the Assigned Contracts has been provided to all parties-in-interest in accordance with, inter alia, Sections 102(1), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014; (ii) such notice was good, sufficient, and appropriate under the particular circumstances, and (iii) no other or further notice of the Motion, the Auction, the Transaction, the Hearing, the assumption and assignment of the Assigned Contracts or the rejection of other executory contracts and unexpired leases is or shall be

required.

D. The Trustee has articulated good and sufficient reasons for: (I) approving the sale of the Purchased Assets free and clear of all liens, claims, encumbrances, and interests to the Purchaser and (ii) authorizing the assumption and assignment to the Purchaser of certain executory contracts and unexpired leases.

E. Approval of the APA and consummation of the Transaction at this time are in the best interests of the bankruptcy estates and parties-in-interest.

F. The Trustee has demonstrated both (I) a good, sufficient, and sound business purpose and justification, and (ii) compelling circumstances to proceed with the Transaction prior to, and outside of, a plan or reorganization pursuant to Section 363(b) of the Bankruptcy Code, in that, among other things:

    (a) The Trustee diligently and in good faith marketed the Purchased Assets to all parties known to have a past or present interest in acquiring the Purchased Assets to secure the highest and best offer therefore by, among other things, (1) giving a notice of the Transaction and the sale to each of the persons or entities that previously had expressed an interest in the Purchased Assets and (2) providing relevant due diligence information to potential purchasers.

    (b) The disposition of the Assets at this time pursuant to Section 363(b) of the Bankruptcy Code, is the most viable alternative to preserve and realize the enterprise value of the Purchased Assets. Delaying the disposition of the Purchased Assets may result in a diminution in the value of the estates.

G. A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities, including: via first-class United States mail, postage prepaid or via the Court's ECF system to (I) the Office of the United States Trustee, (ii) the Debtors' purported pre-petition secured lenders, (iii) each of the Debtors' twenty (20) largest unsecured creditors, (iv) all entities known to have expressed a bona fide interest in acquiring a material portion of the Hotel within the last six months, (v) all federal, state, and local regulatory authorities (including taxing authorities) with jurisdiction over the Debtors and the Purchased Assets, (vi) any parties with any purported interest in the Purchased Assets and identified by the Trustee (vii) all parties to Assigned Contracts, (viii) all known equity security holders of the Debtors, and (ix) all other known parties-in-interest who have entered an appearance and request for service of papers pursuant to Bankruptcy Rule 2002.

H. The Purchase Agreement attached hereto as Exhibit A was negotiated and proposed by the Trustee and Purchaser without collusion, in good faith, and from arm's-length bargaining positions. Neither the Trustee nor the Purchaser has engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under Section 363(n) of the Bankruptcy Code.

I. The Purchaser is a good faith purchaser under Section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded under said section of the Bankruptcy Code. The Purchaser has and will be acting in good faith within the meaning of Section 363(m) of the Bankruptcy Code in consummating the transactions contemplated by the Purchase Agreement and this Order.

J. The consideration provided by the Purchaser, including the Credit Bid, for the Purchased Assets pursuant to the Purchase Agreement (I) is fair and reasonable, (ii) is the highest and best offer for the Purchased Assets, (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practicable alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the state of Tennessee.

K. The sale of the Purchased Assets to the Purchaser will be a legal, valid, and effective transfer of the Purchased Assets, and will vest the Purchaser with all right, title, and interest of the Debtors to the Purchased Assets free and clear of all Liens (as defined in the APA) mortgages, security interests, conditional sale, or other title retention agreements, pledges, liens (as defined in 11 U.S.C. § 101(37)), claims (as defined in 11 U.S.C. § 101(5)), judgments, demands, easements, charges, encumbrances, defects, options, rights of first refusal, interests, or restrictions of any kind (collectively, "Interests"), including, without limitation, Interests (I) that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Debtors' or the Purchaser's interest in the Purchased Assets, or any similar rights, and (ii) relating to taxes arising under, out of, or in connection with the transfer of the Purchased Assets or in any way relating to the operation of the Debtors' business prior to the date (the "Closing Date") of the consummation of the Purchase Agreement (the "Closing").

L. The Trustee may sell the Purchased Assets free and clear of all Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in Section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Interests, including non-debtor parties to Assigned Contracts who did not object, or who withdrew their objections,

to the Transaction or to the Motion, are deemed to have consented pursuant to Section 363(f)(2) of the Bankruptcy Code. Those holders of Interests, including non-debtor parties to Assigned Contracts, who did timely object fall within one or more of the other subsections of Section 363(f) of the Bankruptcy Code, and are adequately protected by having their Interests, if any, attach to the cash proceeds of the Transaction ultimately attributable to the property against or in which they claim an Interest, which proceeds exceed the value of all such interests in the aggregate (see 11 U.S.C. § 363(f)(3)).

M. The Purchaser is the holder of debt, secured by substantially all of the Debtors' assets, including the Purchased Assets, in an amount of no less than $18,096,659.06 as of the Petition Date.

WHEREFORE, IT IS HEREBY ORDERED as follows:

GENERAL PROVISIONS

1. The Trustee's Motion is hereby granted.

2. All objections to the Motion or to the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights identified in such objections, are hereby overruled.

APPROVAL OF THE PURCHASE AGREEMENT

3. The APA between the Trustee and the Purchaser (attached to the Trustee's Motion), and all of the terms and conditions thereof, are approved.

4. Pursuant to Section 363(b) of the Bankruptcy Code, the Trustee is authorized and directed to consummate the Transaction pursuant to and in accordance with the terms and conditions of the APA.

5. The Trustee is authorized and directed to execute and deliver, and are empowered to perform under, consummate, and implement, the Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and to take all further actions as may be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying, leasing, and conferring to the Purchaser or reducing to possession, the Purchased Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Purchase Agreement.

TRANSFER OF ASSETS

6. Pursuant to Section 363(f) of the Bankruptcy Code, the Purchased Assets shall be transferred to the Purchaser and, as of the Closing Date, shall be free and clear of all Interests of any kind or nature whatsoever, with all such Interests of any kind or nature whatsoever attaching to the net proceeds of the Transaction, except as otherwise expressly provided for in the Purchase Agreement, in the order of their priority, with the same validity, force, and effect which they now have as against the Purchased Assets, subject to any claims and defenses the Debtors or Trustee may possess with respect thereto except as to the claims and liens of Purchaser.

7. Except as expressly permitted or otherwise specifically provided by the APA or this Order, all persons and entities (including, but not limited to, all equity security holders, governmental, tax and regulatory authorities, lenders, trade, and other creditors) holding claims or Interests of any kind or nature whatsoever in or against the Debtors or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under, out of, in connection with, or in any way relating to the Debtors or the Purchased Assets, the operation of the Debtors' business prior to the Closing Date, or the transfer of the Purchased Assets to the Purchaser, shall be and hereby are forever barred and estopped from asserting against the Purchaser, its successors or assigns, its property, or the Purchased Assets, such persons' or entities' claims or Interests.

8. The transfer of the Purchased Assets to the Purchaser pursuant to the APA constitutes a legal, valid, and effective transfer of the Assets, and the sale of the Purchased Assets shall vest the Purchaser with all right, title, and interest of the Debtors and the Trustee in and to the Purchased Assets free and clear of all Interests of any kind or nature whatsoever, and the assertion of any such Interests in or against the Purchased Assets shall be and hereby is prohibited.

9. At Closing, the Purchaser shall pay the Purchase Price, including the Credit Bid which shall reduce the amount owed by the Purchaser to the Debtors, as described and in manner provided under the Purchase Agreement.

10. An amount which equals the allowed amount of the secured claim of HMAC, as established by Agreed Order entered in Adversary Proceeding #11-0204 (including credits for all payments made against said claim as part of said Agreed Order, and the amount of attorney fees requested by counsel for HMAC in its fee application) shall be paid to the Trustee, in cash, at Closing. The remaining balance of the HMAC claim (less the amount attributable to post-June 30, 2011 attorney fees) shall be paid to HMAC at closing. The balance shall be held by the Trustee in a segregated account ("HMAC Account") pending a determination of the HMAC

attorney fees. Upon such determination, the Trustee shall pay such funds from the HMAC Account to HMAC as necessary. Any remaining balance shall be paid back to Purchaser within twenty-one (21) days of such determination.

11. At or before the Closing, the Purchaser may designate one or more designees to take title to the Purchased Assets. References to the Purchaser in this Order, in the Purchase Agreement, and the Bidding Procedures Order shall apply to such designee(s); provided, however, that any such designation shall not release the Purchaser from any of its duties or obligations under the Purchase Agreement or this Order.

12. After the closing of the Transaction pursuant to the APA, the Trustee shall not pursue any claim or avoidance recovery or claim against Purchaser or Branch Banking and Trust Company.

REJECTION OF EXECUTORY CONTRACTS

13. All executory contracts and unexpired leases with the Debtors are hereby rejected pursuant to 11 U.S.C. §365, as of the Closing Date, and the Trustee shall have no further obligations or liabilities under such contracts or leases upon the Closing. Specifically, the License Agreement with HHFI [or the Franchise Agreement as defined in section 1.1 of the APA] and all rights thereto, including the Seller's rights to use the Marks and System, is a Nonassignable Asset, and Purchaser acknowledges that HHFI does not consent to the assignment of the License Agreement [Franchise Agreement] and that Purchaser is not acquiring any right or benefit thereto by this Agreement.

ADDITIONAL PROVISIONS

14. The consideration, including the credit bid of approximately $10,000,000 of the Purchaser Secured Debt (said credit bid to be increased by any reduced amount of cash required at closing which is less than the estimated $4,250,000 needs to satisfy HMAC pursuant to the compromise order), the Assumed Liabilities and the satisfaction of the HMAC Lien, provided by the Purchaser for the Purchased Assets under the APA constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the state of Tennessee and the Transaction may not be avoided under Section 363(n) of the Bankruptcy Code.

15. The Purchaser shall assume and be responsible for all taxes owed to The

Metropolitan Government, including the real property taxes for 2011 and subsequent years, as well as all personal property taxes owed for 2010 and 2011.

16. Upon closing the Purchaser shall pay Hunter Realty Associates, Inc. ("Hunter") the amount of $150,000 in satisfaction of all broker fees and the Trustee shall have no obligation to pay any fees to Hunter from assets of the estate

17. On the Closing Date of the Transaction, each of the Debtors' creditors shall execute such documents and take all other actions as may be necessary to release its Interests, if any, in the Purchased Assets and to give the Purchaser clear title to the Purchased Assets.

18. This Order (a) shall be effective as a determination that, on the Closing Date, all Interests of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing have been unconditionally released, discharged, and terminated (other than the Assumed Liabilities), and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets.

19. If any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing Interests in the Purchased Assets shall not have delivered to the Trustee, prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Interests which the person or entity has with respect to the Purchased Assets, then (a) the Trustee is authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Purchased Assets, and (b) the Purchaser is authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests in the Purchased Assets of any kind or nature whatsoever.

20. All entities who are presently, or on the Closing Date may be, in possession of some or all of the Purchased Assets are hereby directed to surrender possession of the Purchased Assets to the Purchaser on the Closing Date.

21. Except as otherwise specifically provided herein or in the Purchase Agreement,

the Purchaser shall have no liability or responsibility for any liability or other obligation of the Debtors arising under or related to the Purchased Assets.  Without limiting the generality of the foregoing, and except as otherwise specifically provided herein and in the Purchase Agreement, the Purchaser shall not be liable for any claims against the Debtors, or any of its predecessors or affiliates and the Purchaser shall have no successor or vicarious liabilities of any kind or character, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the transfer of the Purchased Assets or the operation of the Debtors' business prior to the Closing Date.

22. Under no circumstances shall the Purchaser be deemed a successor of or to the Debtors for any claim or Interest in or against the Debtors or the Purchased Assets, of any kind or nature whatsoever.  The sale, transfer, assignment, and delivery of the Purchased Assets shall not be subject to any claims or Interests, and claims and interests of any kind or nature whatsoever shall remain with, and continue to be obligations of, the Debtors.  All persons holding claims or Interests in or against the Debtors or the Purchased Assets, of any kind or nature whatsoever, shall be and hereby are forever barred and estopped from asserting, prosecuting, or otherwise pursuing such claim or Interests against the Purchaser, its property, its successors and assigns, or the Purchased Assets with respect to any claim or Interest of any kind or nature whatsoever such person or entity had, has, or may have in or against the Debtors, its estate, officers, directors, shareholders, or the Purchased Assets. Following the Closing Date, no holder of any claim or Interest in or against the Debtors shall interfere with the Purchaser's title to, or use and enjoyment of, the Purchased Assets based on or related to such claim or Interest.

23. This Court retains jurisdiction to enforce and implement the terms and provisions of this Order, the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction (a) to compel delivery of the Purchased Assets to the Purchaser, (b) to resolve any disputes arising under or related to the Purchase Agreement, except as otherwise provided therein, (c) to interpret, implement, and enforce the provisions of the Order, (d) to protect the Purchaser (I) against assertion of any of the Excluded Liabilities, and (ii) against any claims or Interests in or against the Debtors or the Assets, of any kind or nature whatsoever.

24. The transactions contemplated by the Purchase Agreement are undertaken by the

Purchaser in good faith, as that term is used in Section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transaction shall not affect the validity of the Transaction to the Purchaser, unless the Closing of the Transaction is duly stayed pending such appeal. The Purchaser is a purchaser in good faith of the Purchased Assets, and is entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.

25. The terms and provisions of the Purchase Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Trustee, the Debtors, its estates, its creditors and equity security holders, the Purchaser, and its respective affiliates, designees, successors, and assigns, and any affected third parties including, but not limited to, all persons asserting Interests in the Purchased Assets to be sold to the Purchaser pursuant to the Purchase Agreement, notwithstanding any appointment of any subsequent trustee(s) under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding. The transfer of the Purchased Assets to the Purchaser, pursuant to the Purchase Agreement and this Order, is not contrary to any applicable law or regulation.

26. The failure specifically to include any particular provisions of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety.

27. The Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estate.

28. The stay imposed by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure is hereby waived.

*This order was signed and entered electronically as indicated at the top of the first page.*

APPROVED FOR ENTRY BY:

*/s/ Robert H. Waldschmidt*
Robert H. Waldschmidt (4657)
HOWELL & FISHER PLLC
300 James Robertson Pkwy
Nashville, TN 37201-1107

615-244-3370 Fax:615-259-2179
rhwaldschmidt@aol.com
Counsel for Trustee Robert H. Waldschmidt