UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| In re: | Case No.: 10-13106-KL-11 |
| | 10-13107-KL-11 |
| 315 Union Street Holdings, LLC and Union Street Plaza Operations, Inc., | Jointly Administered |
| | Judge Lundin |
| Debtors. | |

## MOTION OF HOLIDAY HOSPITALITY FRANCHISING, INC. FOR AN ORDER (1) TERMINATING THE LICENSE AGREEMENT, (2) AUTHORIZING THE REMOVAL OF THE HOTEL FROM THE FRANCHISE SYSTEM AND RESERVATION SERVICE, (3) REQUIRING DE-IDENTIFICATION OF THE HOTEL, AND (4) GRANTING RELATED RELIEF

Holiday Hospitality Franchising Inc. ("HHFI") files this Motion for an Order: (1) Terminating the License Agreement, (2) Authorizing the Removal of the Hotel from the Franchise System and Reservation Service, (3) Requiring De-Identification of the Hotel, and (4) Granting Related Relief (the "Motion"), and in support of the Motion shows as follows:

### THE LICENSE AGREEMENT WAS REJECTED PURSUANT TO THE SALE ORDER

1.      HHFI is the licensor pursuant to that certain Hotel Indigo License Agreement dated October 31, 2006 (as same may have been amended, the "License Agreement") that permits Union Street Plaza Partners, LLC (the "Licensee") to operate a Hotel Indigo hotel (the "Hotel"), located at 301 Union Street, Nashville, TN 37201, and to utilize the Hotel Indigo® service mark. A true and correct copy of the License Agreement is attached hereto as **Exhibit 1**.

2.     HHFI, its predecessors, parents and/or affiliates (collectively, "InterContinental Hotels Group" or "IHG") have been in the business of operating, both self-owned and through management/license agreements, a worldwide network of hotels for almost fifty years.  In running its business, IHG operates and utilizes a system (the "System") that is composed of elements designed to provide distinctive, high quality hotel services to the public under various service marks, including "Hotel Indigo®," "Holidex" and other service marks (collectively, the "Marks").  The System includes access to a reservation service operated by IHG.  *See* License Agreement, paragraph 1.B.

3.     The License Agreement was rejected pursuant to the Order (1) Approving Sale of Certain Assets of the Debtors Free and Clear of all Liens, Claims, Encumbrances, and Other Interests, and (2) Rejecting Certain Executory Contracts and Unexpired Leases, entered on September 14, 2011 [Docket No. 180] (the "Sale Order").  As explicitly stated in paragraph 12 of the Sale Order:

> All executory contracts and unexpired leases with the Debtors are hereby rejected pursuant to 11 U.S.C. §365, as of the Closing Date, and the Trustee shall have no further obligations or liabilities under such contracts or leases upon the Closing. **Specifically, the License Agreement with HHFI [or the Franchise Agreement as defined in section 1.1 of the APA] and all rights thereto, including the Seller's rights to use the Marks and System, is a Nonassignable Asset, and Purchaser acknowledges that HHFI does not consent to the assignment of the License Agreement [Franchise Agreement] and that Purchaser is not acquiring any right or benefit thereto by this order**.

Sale Order, paragraph 12 (emphasis added).

4.     HHFI is informed that the Closing Date as defined in the Sale Order is set for September 30, 2011.

5.     Purchaser, TN Nasville, LLC ("Purchaser"), did not acquire any rights to the License Agreement or to the use of the Marks and System.

2

6.     HHFI is informed that Purchaser is not going to obtain a new license from HHFI, and will not be operating the hotel as a Hotel Indigo.

7.     The License Agreement granted the Debtor a nonexclusive trademark license to use the System and Marks and therefore affords HHFI the trademark protections of the Lanham Act. *See* 15 U.S.C. § 1114(1) and 1125(a).  The Lanham Act allows trademark owners to sue unauthorized trademark users, as trademark licenses are "personal and unassignable without the consent of the licensor." *N.C.P. Mktg. Group, Inc. v. Billy Blanks (In re N.C.P. Mktg. Group, Inc.)*, 337 B.R. 230 (D. Nev. 2005).

8.     Paragraph 2 of the License Agreement, in relevant part, provides:

…Licensee is acquiring no rights hereunder other than the right to use the System as specifically defined herein in accordance with the terms of this License."

License Agreement, paragraph 2.

9.     In addition, Section 7 of the License Agreement provides:

The Licensee acknowledges and will not contest, either directly or indirectly, Licensor's unrestricted and exclusive ownership of the System and any element(s) or component(s) thereof, or that Licensor has the sole right to grant licenses to use all or any of the element(s) or component(s) of the System.  Licensee specifically agrees and acknowledges that Licensor owns or is licensed to use the mark "Hotel Indigo"… and other elements associated with the System…, or derived therefrom (including but not limited to domain names or other identifications or elements used in electronic commerce), together with the goodwill symbolized thereby, and that Licensee will not contest directly or indirectly the validity or ownership of the Marks either during the term of this License or after its termination.

License Agreement, paragraph 7(A) (emphasis added).

10.    Pursuant to the explicit terms of the License Agreement, the Debtor never possessed any legal or equitable interests in the License Agreement beyond those expressly granted by HHFI.

11.     Pursuant to the License Agreement, <u>any change in the control of the Debtor's Hotel property is cause for the immediate termination of the License Agreement</u>.  Section 12.C(2) of the Franchise Agreement in pertinent part provides:

> This License may be terminated by Licensor immediately (or at the earliest time permitted by applicable law) if:
>     (2)  Licensee voluntarily or involuntarily loses possession or the right to possession of all or a significant part of the Hotel…

Franchise Agreement, § 12(D)(2).

12.     Upon termination, no further use of the System or Marks is permitted.  As stated in paragraph 12.D of the License:

> Licensee will take whatever action is necessary to assure that no use is made of any part of the System at or in connection with the Hotel after the License Term ends.  This will involve, among other things, returning to Licensor the Manual and all other materials proprietary to Licensor, ceasing the use of any of the Marks, physical changes or distinctive System features of the Hotel, including, but not limited to, removal of the primary freestanding sign down to the structural steel, as well as removal of artwork, signage, graphics, and paint schemes, whether on walls, ceilings or floors, and all other actions required to preclude any possibility of confusion on the part of the public and to ensure that the Hotel is no longer using all or any part of the System or otherwise holding itself out to the public as a Hotel Indigo.

13.     The Hotel needs to be immediately taken out of the System, including shutting down the Hotel's participation in IHG's reservation service.  The buyer cannot continue to use the Marks after closing, and doing so would violate the Lanham Act. Yet, hotel guests that make reservations expecting to stay in an HHFI branded hotel will in fact be staying at the buyer's hotel which is not an authorized franchisee.  Therefore, de-identification and removal from the System needs to be immediately accomplished concurrently with or immediately after the closing to avoid confusion.

LEGAL02/32886802v1

WHEREFORE, for the reasons stated above, HHFI respectfully requests that the Court schedule an expedited hearing and enter an order: (1) Terminating the License Agreement, (2) Authorizing the Removal of the Hotel from the Franchise System and Reservation Service, (3) Requiring De-Identification of the Hotel, and (4) Granting Related Relief.

DATED: September 28, 2011        **ALSTON & BIRD LLP**

Leib M. Lerner (CA Bar No. 227323)
**ALSTON & BIRD LLP**
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
Email: leib.lerner@alston.com

-and-

/s/ William L. Norton, III
William L. Norton, III
**BRADLEY ARANT BOULT CUMMINGS LLP**
P.O. Box 340025
Nashville, TN 37203
615-252-2397
Fax: 615-252-6397
bnorton@babc.com

*Attorneys for Holiday Hospitality Franchising, Inc.*

LEGAL02/32886802v1